FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 SEP 20 AM 8:30
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| SHEILA A. ROBERTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 111-154 |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Sheila A. Roberts, ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

### I.     BACKGROUND

Plaintiff protectively applied for SSI on March 12, 2008, alleging a disability onset date of February 1, 2007. Tr. ("R."), pp. 14, 95-99. The Social Security Administration denied Plaintiff's applications initially, R. 45-48, and on reconsideration, R. 54-57. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a

video hearing on March 9, 2010. R. 544-70. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as Tina Baker-Ivey, a Vocational Expert ("VE"). See id. On May 3, 2010, the ALJ issued an unfavorable decision. R. 11-26.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since March 12, 2008, the application date (20 CFR 416.971 *et seq*).

2. The claimant has the following severe impairments: seizure disorder, infrequent, some related to alcohol abuse; cognitive heart failure/ischemic cardiomyopathy; chronic hypertension; depressive disorder not otherwise specified; cognitive disorder; and alcohol abuse (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity to perform light work[1] as defined in 20 CFR 416.967(b) with the following exceptions: she can occasionally climb stairs and ramps but never ladders or scaffolds. She should completely avoid unprotected heights and moving machinery. She has marked limitations in her ability to understand, remember, and carry out detailed and complex tasks. She is best suited to performing jobs that do not require any

---

[1]"Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

2

>     interacting with the public. The claimant has no past relevant work (20 C.F.R. 416.965).
>
> 5.  Considering the claimant's age, education, work experience, residual functional capacity ("RFC"), and the testimony of the VE, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including "surveillance system monitor," assembler, and "Cleaner/Housekeeper." (20 C.F.R. 416.969 and 416.969(a)). Therefore, the claimant was not under a disability, as defined in the Social Security Act, from March 12, 2008, through May 3, 2010 (the date of the ALJ's decision).

R. 16-26.

When the Appeals Council denied Plaintiff's request for review, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal of the adverse decision. Plaintiff argues that the ALJ's denial of her disability claim is not supported by substantial evidence because: (1) the ALJ erred in failing to consider whether Plaintiff's mental impairment meets the criteria of Listing 12.05(C); (2) the ALJ erred in failing to consider Listing 5.08; (3) the ALJ erred in failing to adequately assess Plaintiff's RFC; and (4) the ALJ erred by posing an incomplete hypothetical question to the VE that did not include all of Plaintiff's "medically determinable impairments and resulting limitations." (See doc. no. 9, pp. 1-2 (hereinafter "Pl.'s Br.").) In relation to the last three of her four arguments, Plaintiff asserts that the ALJ "failed to apply the proper legal standards when evaluating the medical opinions of evidence" and made improper credibility determinations. (Id.) The Commissioner maintains that the decision to deny Plaintiff's application for benefits was supported by substantial evidence and should be affirmed. (See doc. no. 10 (hereinafter "Comm'r's Br.").) After the

3

Commissioner filed his brief in support of his arguments, Plaintiff filed a reply brief in response to those arguments. (Doc. no. 11.)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire

record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

As noted above, Plaintiff's first allegation of error is that the ALJ improperly failed to consider Listing 12.05(C) in light of the results of IQ tests administered by John Whitley, III, Ph.D, a psychologist who performed consultative evaluations of Plaintiff in 2007 and 2008, R. 274-76, 353-57, and Douglas S. Payne, Ph.D, a psychologist who performed a consultative evaluation of Plaintiff in 2005, R. 254-58. Pl.'s Br., pp. 12-15. Plaintiff argues that, moreover, the ALJ's decision failed to assign any weight to Dr. Payne's opinion and, in fact, did not acknowledge it at all. Pl.'s Br., pp. 13-15. The Commissioner, on the other hand, contends that substantial evidence in the record proves otherwise. See Comm'r's Br., pp. 7-12.

The Court notes from the outset that Plaintiff bears the burden of showing that her condition meets or equals the Listing. Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660,

5

662 (11th Cir. 1987) (*per curiam*). In order to show that her impairment meets a Listing, Plaintiff needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments that are considered severe enough to prevent a person from performing any substantial gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

Listing 12.05(C) pertains to "Mental retardation," which "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. The Listing further provides: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. Thus, a claimant generally meets the Listing 12.05(C) criteria when she "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform

basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).[2] The Eleventh Circuit, however, has recognized "that a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Id.; see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (noting that while a claimant's low IQ scores give rise to a presumption of mental retardation, such a presumption may be rebutted with evidence of daily activities that are inconsistent with a diagnosis of mental retardation); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (*per curiam*) (noting that IQ "test results must be examined to assure consistency with daily activities and behavior").

Here, as the Commissioner concedes, Comm'r's Br., p. 8, the ALJ found that Plaintiff has a variety of "severe impairments" that effectively satisfy the second prong of 12.05(C) requiring "a physical or other mental impairment imposing an additional and significant work-related limitation of function." R. 16; see also 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Thus, the analysis of whether Plaintiff meets the criteria of Listing 12.05(C) turns on whether or not Plaintiff has provided valid IQ scores that fall within the requisite range. Id. However, despite Plaintiff providing two separate sets of IQ test results, R. 257, 355, both of which show Plaintiff scoring firmly within a range of 50 to 70, the ALJ mentions

---

[2]Although paragraph C of the 12.05 Listing sets forth two criteria, an IQ prong and an additional impairment prong, these criteria apply in conjunction with the Listing's definition of mental retardation as "significantly subaverage general intellectual function with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C) (emphasis added); see also Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (noting the criteria for obtaining benefits under Listing 12.05(C)).

Plaintiff's IQ only twice in his decision, and then only in the context of Dr. Whitley's assertion that he believed Plaintiff to have attempted to exaggerate her issues during the test that he administered. R. 22-23. Notably, the ALJ makes no mention at all of an evaluation and IQ test conducted by Dr. Payne in 2005, which is also in the record.[3] R. 257. The ALJ does refer to Exhibit 2F, which includes Dr. Payne's evaluation and test, on two occasions in his decision, but he does so in mistaken reference to an evaluation conducted by Tralanna Pacurar, M.D., R. 259-61, in order to note that Dr. Pacurar did not find any medical evidence that Plaintiff had a significant vision defect, R. 18, and that Plaintiff did not appear to have any memory problems, R. 22.

As noted above, Plaintiff bears the burden of showing that her condition meets or equals the Listing. Wilkinson *ex rel.* Wilkinson, 847 F.2d at 662. In Slater v. Astrue, 2012 U.S. Dist. LEXIS 39576, at *19 (M.D. Ala. Mar. 23, 2012), the court held that the plaintiff provided sufficient information concerning his mental condition such that the Commissioner erred as a matter of law where the ALJ failed to consider Listing 12.05(C). In that case, among other medical records relevant to that listing, the plaintiff presented full scale IQ scores of 64, 62, and 60, and the Court made a "limited ruling that the issue of mental retardation pursuant to listing 12.05(C) was raised sufficiently by [plaintiff] to show a prima facie case of a possible ailment that. . . the ALJ failed to address." Id. at *15, *18. Based on the ALJ's error in failing to consider Listing 12.05(C), the court held that "the case

---

[3]Although Dr. Payne's 2005 test was conducted prior to Plaintiff's claimed disability onset date, in the Eleventh Circuit "it is presumed that a person's I.Q. remains fairly constant throughout [her] life." Jones v. Astrue, 494 F. Supp. 2d 1284, 1287 (N.D. Ala. June 25, 2007) (citing Hodges v. Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001)).

8

warrant[ed] remand for further proceedings regarding whether the IQ score is valid, and if there are other mental or physical impairments that would cause the claimant to meet the listing under 12.05(C)." Id. at *19.

Here, in an effort to meet her burden, Wilkinson ex rel. Wilkinson, 847 F.2d at 662, Plaintiff has provided two sets of IQ results, each of which shows a score within or below the 12.05(C) requirement of 60 to 70. In Dr. Whitley's test, administered on May 16, 2008, Plaintiff received a full scale score of 58, a verbal score of 64, and a performance score of 58. R. 355. In Dr. Payne's test, administered on August 4, 2005, Plaintiff received a full scale score of 67, a verbal score of 67, and a performance score of 73. R. 257. Furthermore, in her hearing, Plaintiff stated that she has ongoing memory issues and requires help in dealing with those issues. R. 564. In a psychological evaluation, Theodore Daniel, Psy.D., described Plaintiff's memory operations, insight, and judgment as "limited." R. 252. In a "Mental Status Evaluation" in 2007, Dr. Whitley diagnosed Plaintiff as having a cognitive disorder and described her as having "difficulty understanding questions." R. 276, 278. Thus, based on the information in the record concerning the deficiency of Plaintiff's mental faculties, the ALJ should have addressed whether she met the requirements of 12.05(C).

In support of his argument that there is sufficient evidence to support the ALJ's decision, the Commissioner states that, although "the ALJ admittedly did not discuss Plaintiff's impairment under listing 12.05, he did discuss the finding Dr. John Whitley, III, made of a cognitive disorder in 2007." Comm'r's Br., pp. 8-9. Furthermore, the Commissioner argues, the ALJ discussed Dr. Whitley's May 2008 consultative evaluation, in which Dr. Whitley opined that Plaintiff "exaggerated her degree of impairment." Id. As

9

noted above, the presumption of mental retardation from low IQ scores can be rebutted with evidence of daily activities that are inconsistent with such a diagnosis. See Hodges, 276 F.3d at 1269 (recognizing requirement of Listing 12.05(C) for manifestation of mental retardation before age 22 and allowing that Commissioner may use evidence of activities of daily life to rebut presumption of mental impairment).

Here, it is true that the ALJ made a brief reference to the results of Dr. Whitley's IQ test, although the Court notes that he did so only to discount them based on Dr. Whitley's opinion that the results were "an underestimation of [Plaintiff's] true functioning," R. 355, and did not provide any sort of analysis comparing the scores to contradictory evidence of her daily activities. R. 22; see also Hodges, 276 F.3d at 1269. The ALJ is required to address the validity of an IQ score that he intends to discount. See Slater, 2012 U.S. Dist. LEXIS 39576 at *16 (noting that, while "a valid IQ score does not mean that conclusive evidence of mental retardation exists," the validity of the IQ score "must be addressed by the ALJ"). However, even if the ALJ's cursory discussion and subsequent dismissal of Dr. Whitley's test results *was* sufficient to meet the requirement that the IQ score's validity be addressed, that possibility does not excuse the ALJ's complete failure to acknowledge the existence of the scores from Dr. Payne's earlier test, nor does it explain why he did so. Regardless of whether or not any discrepancy exists as to the validity of Dr. Payne's results, whatever brief attention the ALJ devoted to the validity of Dr. Whitley's results does not extend backwards to Dr. Payne's results such that it was appropriate to entirely discount them from the analysis. See Slater, 2012 U.S. Dist. LEXIS 39576 at *17 (noting that, even

though the court concludes that "there is some question as to the validity and accuracy of the IQ score of [plaintiff]," it is error for the ALJ not to undertake to analyze that score).

The Commissioner goes to great lengths to argue the reasons that the ALJ might have had to ignore Dr. Payne's test results. Comm'r's Br., pp. 10-12. In doing so, he notes that Dr. Payne qualified the results by stating that he considered them to be "lowered by alcohol use and medication" as well as "inconsistent with [Plaintiff's] prior educational and vocational background." Id. at 11; R. 257. The Commissioner further notes Plaintiff's comments in Dr. Payne's examination that she reads magazines, draws, gets along well with others, has friends, attends church weekly, and goes out to eat monthly. Comm'r's Br., p. 11; R. 254-56. Finally, he asserts that the ALJ was "arguably aware of Dr. Payne's evaluation" due to the evaluation having been discussed within Michael Carter, Ph.D's psychiatric assessment of Plaintiff, and due to Dr. Carter's assessment in turn being "afforded significant weight," if not actually discussed at length, in the ALJ's decision. Comm'r's Br., p. 11; R. 23-24.

However, as Plaintiff points out (doc. no. 11, p. 2), the Commissioner's attempt to reweigh the medical evidence by discussing the merits of Dr. Payne's opinion in an effort to justify the ALJ's decision is improper; indeed, the Court's "limited review [of the record] precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*) (citing Bloodsworth, 703 F.2d at 1239). Whatever the merits of the Commissioner's argument, the critical fact is that his argument was not made by the ALJ, and the Court declines this invitation to conduct a *de novo* review of the evidence with regard to Dr. Payne's opinion,

as such determination is for the ALJ, not this Court, to make in the first instance. See Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]"). Moreover, the Commissioner's thin argument that the ALJ was "arguably aware" of Dr. Payne's test due to it being discussed within an assessment that the ALJ then in turn discussed is wholly unavailing. Whether or not the ALJ was aware of Dr. Payne's test, the ALJ failed to affirmatively discuss the test even when confronted with a considerable number of psychological evaluations and tests concerning deficiencies in Plaintiff's mental faculties, and the Court will not allow him to be absolved of his duty to discuss the test simply by establishing a tangential connection to another assessment that *does* discuss it. R. 23-24; see also Slater, 2012 U.S. Dist. LEXIS 39576 at *16 (noting that, since the validity of an IQ score must be addressed by the ALJ, it is error where there is no analysis done by the ALJ for the court to consider).

The ALJ has a duty to develop the facts of the case fully and fairly. Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984) (citing Ford v. Secretary of Health and Human Services, 659 F.2d 66, 69 (5th Cir. 1981)). As part of that duty, the ALJ must "make clear the weight accorded to the various testimony considered." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). Specifically, the ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision" since, "in the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Id. Here, although the ALJ did specify that he afforded "significant weight" to Dr. Whitley's medical

opinions, R. 23, he inexplicably neglected to afford any weight whatsoever to Dr. Payne's medical opinions, given that they are not even mentioned in passing in the decision. This is an especially significant omission given that Dr. Payne stated that his test results were "valid reflections of [Plaintiff's] current function" and specifically diagnosed Plaintiff as having "mildly retarded intellectual functioning," R. 257, and a somewhat puzzling one given that the ALJ directly addressed and discussed Listings 12.02, 12.04, and 12.09, but conspicuously failed to address 12.05(C). R. 18-19; see also Slater, 2012 U.S. Dist. LEXIS 39576 at *18 (noting in its decision to remand that, despite the plaintiff having made a prima facie showing of possible mental retardation pursuant to listing 12.05(C), the ALJ directly addressed and discussed Listings 12.04 and 12.06 but conspicuously failed to address Listing 12.05(C)).

Moreover, the Court is not persuaded by the Commissioner's argument that the ALJ's failure to discuss Dr. Payne's test results amounts to harmless error. The Commissioner would have the Court make a *de novo* determination that, based on his own arguments rather than those of the ALJ, which are nowhere to be found in the decision, Dr. Payne's IQ test results are invalid. Comm'r's Br., p. 12. However, as noted above, such a determination is for the ALJ, not this Court, to make in the first instance. Martin, 748 F.2d at 1031.

In sum, because the ALJ improperly failed to consider Listing 12.05(C) and to properly address the medical opinion and test results of Dr. Payne, a remand is warranted.[4]

---

[4]In light of its determination that the Commissioner's decision is not supported by substantial evidence due to the ALJ's failure to consider Listing 12.05(C) and Dr. Payne's medical opinion and test results, the Court need not reach the remainder of Plaintiff's contentions. See Slater, 2012 U.S. Dist. LEXIS 39576, at *14 ("[T]he Court pretermits discussion of the plaintiff's specific arguments because the Court concludes that the ALJ

13

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 20th day of September, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

erred as a matter of law at step three of the sequential analysis"). Of course, on remand, Plaintiff's claims must be evaluated in compliance with the applicable regulations and case law in all respects. For example, the entirety of the relevant evidence must be taken into account in determining the severity of Plaintiff's alleged impairments and in assessing Plaintiff's subjective complaints and RFC. See 20 C.F.R. § 416.920(e); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Furthermore, the underlying assumptions of any hypothetical questions presented to a VE must accurately and comprehensively reflect the claimant's characteristics. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987) (*per curiam*); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985) (*per curiam*); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); Coleman v. Barnhart, 264 F. Supp.2d 1007, 1011 (S.D. Ala. 2003) (failing to comprehensively describe a claimant's impairments and limitations is grounds for remanding case for further proceedings).